### WHITE, MASTER *ET AL. v.* BROWN

#### (126 S. E., 750)

1. EXECUTORS AND ADMINISTRATORS—EVIDENCE HELD INSUFFICIENT TO PROVE THAT SUCCESSFUL BIDDER WAS FRAUDULENTLY DECEIVED AS TO IDENTITY OF LAND.—In action against successful bidder at master's sale for refusal to comply with bid, evidence *held* insufficient to prove that creditor and heir fraudulently deceived bidder as to identity of land being sold.

2. EXECUTORS AND ADMINISTRATORS—MASTER'S SALE AT RISK OF SUCCESSFUL BIDDER WHO REFUSED TO COMPLY WITH BID, HELD UNAUTHORIZED.—Where order for sale by master of decendant's land for payment of debts provided that, on purchaser's failure or refusal to comply with terms of sale within five days, master should readvertise in like manner, and offer property for sale until property should be sold to bidder who would comply with terms, the master, on

successful bidder's refusal to comply with bid, was not authorized
to resell property at bidder's risk, notwithstanding Civ. Code 1912,
§ 3706, providing for such resale on sale under execution, since
such statute does not apply to judicial sales, and master was bound
strictly by terms of the order of sale.

Before JOHNSON, J., Oconee, November, 1924. Reversed
and remanded.

Action by W. O. White, as master, and others, against
Artuhr Brown. Judgment for plaintiffs, and defendant ap-
peals.

Defendant claimed that he was misled by statement made
by one of decedent's creditors, for payment of whose debt
land was being sold, as to identity of land being sold, made
with intent to deceive defendant, and acquiesced in by one of
the heirs, his testimony on such issue showed merely that the
creditor, in answer to defendant's question as to whether
land on east side of certain road was the land being sold,
replied, "Yes; I think it is," and that the heir standing near
by nodded and said, "How do you do," to defendant. The
land in fact was to the east of the road, but was from three
quarters to a mile from the road. The land was correctly
described in advertisements of sale.

*Mr. E. L. Herndon,* for appellant, cites: *Report of ref-
eree will be sustained if not manifestly wrong* (114 S. C.,
186) *but the Supreme Court in a chancery case will review
the findings of fact:* 113 S. E., 791. *Fraud or misrepresen-
tation on the part of the purchaser is grounds for setting
aside sale:* 16 R. C. L., 89, Sec. 65; 58 S. C., 477; 17 A.
& E. Enc., 996-7; 86 S. C., 228; 120 S. E., 755. *Mistake as
a ground for setting aside sale:* 50 S. C., 9. *Right to a
reasonable time after bidding for investigation:* 87 S. C.,
350; 13 S. C., 212; 97 S. C., 242; 121 S. C., 83; 8 Rich.,
315; 77 S. E., 700; 77 S. E., 843; 4 A. & E. Enc., 803.

*Mr. J. R. Earle,* for respondent, cites: *The contract is
complete after bidder's proposal was accepted and deed
tendered:* 18 Cyc., 782-3; 27 Cyc., 1486; 24 Cyc., 46-7.

February 27, 1925.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The record shows:

"This action was commenced on the 8th day of September, 1921. The complaint alleges that on the 3d day of November, 1920, an action was commenced in the Court of Common Pleas for Oconee County, wherein Mrs. Janie Sisk and Lee Sisk were plaintiffs, and Annie (Sisk) Chapman, Agnes Sisk, and S. M. Littleton were defendants, for the purpose of the sale of a tract of land for the purpose of paying debts of H. L. Sisk, who at the time of his death owed considerable debts, amongst which was that of the plaintiff here, S. M. Littleton, which was secured by a mortgage of the said tract of land; that the said tract of land was described in the complaint of that action as: 'All that certain piece, parcel or tract of land situate, lying and being in the county and state aforesaid, containing 53 acres, more or less, near Salem, adjoining lands of Janie Sisk, J. A. Robertson, J. F. Fowler, L. M. Brown and others, and being the same tract of land conveyed to H. L. Sisk by his wife, Janie Sisk'; that such proceedings were had as resulted in a final decree, as follows (omitting caption):

"Upon hearing the report of the master, W. O. White, upon the reference held by him on the 13th day of December, 1920, and upon motion by M. R. McDonald, plaintiffs' attorney, with the consent of J. B. S. Dendy, guardian *ad litem* and with the consent of the defendant, S. M. Littleton, it is, therefore, ordered, adjudged, and decreed, that the tract of land described in the complaint be sold by the master on sales day in January, 1921, to the highest bidder for cash, in front of the courthouse door, after having duly advertised the time, place and terms of sale for the time required by law, in the Keowee Courier, a newspaper published in Walhalla, county and state of aforesaid; that in the event the purchaser of this sale fail or refuse to comply with the terms

of this sale within five days thereafter, then the master to readvertise in a like manner and offer the same for sale until he shall have found a purchaser, or purchasers, who will comply with the terms of sale; that the master do execute in the usual form and manner of a deed of conveyance to the purchaser, or purchasers, of said premises, upon such purchaser paying to him the full amount of his bid; that the purchaser pay extra for the deed of conveyance.

"It is further ordered, that the funds derived from the sale of this land be first applied to the cost and expenses of this action, including $40 as a fee for the plaintiffs' attorney, and $10 as a fee for the guardian *ad litem*; that the amount due be paid to the defendant, S. M. Littleton, on his mortgage; that after such payment to him, then the equity of redemption shall be barred on said real estate mortgage."

At the sale, the appellant, Arthur Brown, bid in the land, but refused to comply. The land was resold and brought about one-half of Brown's bid. This action is based on the theory that the resale was at the risk of Brown, the first purchaser. Brown's defense was fraud, and denied that the second sale was made at his risk.

The case was referred to the master, who found that there was no fraud. This finding was concurred in by the trial Judge. Only two questions need to be considered: First. Was there fraud? Second. Was the resale at the risk of the first purchaser?

I. Was there fraud? The answer is: The defendant did not make out his defense of fraud.

II. Was the resale at the risk of Brown, the first purchaser? The order did not provide for a resale at the risk of the first or any intermediate purchaser. The land was to be sold and resold from time to time, until a purchaser should be found who would comply.

The master was bound strictly by the terms of the order of sale. The statute provides that when the sheriff makes a sale under execution, and the purchaser does not comply, he

may resell at the risk of the purchaser, but this does not apply to judicial sales. In *Calder v. Maxwell,* 99 S. C., 117; 82 S. E., 997, we find:

"The order of the Court is the blazed way for the officer to follow, and no other.

"The officer in this instance, and in all instances, unless the order contain other instructions, should have reported to the Court the sale, and the refusal of the purchaser to comply with his bid; and the purchaser would then have been noted to show cause why he did not comply. The purchaser might have a good reason to refuse compliance, or he might have none; but the fact would appear.

"The provisions of the statute, with reference to sale by the sheriff under execution, have no relevancy to this issue here. Section 3706, Code of Laws 1912."

If the parties had desired to hold Brown to his bid, they should have issued a rule to show cause why he should not comply and then the Court could have directed either an absolute compliance, or a resale at his risk. That was done in *Haig et al. v. Commissioners of Confiscated Estates,* 1 Desaus., 144.

The penalty for noncompliance must be fixed by the Court, as none was provided for in the order of sale, and of course the penalty must be fixed before compliance in is possible.

The judgment is reversed.

Messr. Justices Watts and Marion, and Mr. Acting Associate Justice W. C. Cothran concur.